IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JAMES R. TAYLOR,

:

       Petitioner,                     Case No. 3:04-cv-154

                            :       District Judge Walter Herbert Rice
   -vs-                             Chief Magistrate Judge Michael R. Merz

MARGARET BRADSHAW, Warden,

                            :

       Respondent.

---

## REPORT AND RECOMMENDATIONS ON THE MERITS

---

      This capital habeas corpus case is before the Court for decision on the merits.  Petitioner

pleads fourteen grounds for relief as follows:

> **First Ground for Relief:** James R. Taylor, Sr.'s, right to a fair trial
> and due process under the Fifth, Sixth, Eighth and Fourteenth
> Amendments to the Constitution of the United States were violated
> when the trial court did not utilize a higher standard when dealing
> with Petitioner's request to represent himself in his capital murder
> trial.  Supreme Court precedent that permits a defendant to represent
> himself in his trial should be revisited when that trial is a capital
> murder trial.

> **Second Ground for Relief:** Even if this Court does not find *Faretta
> v. California* to be distinguishable in a capital case, in this particular
> case Petitioner's waiver of counsel was neither knowing nor
> intelligent, therefore, the trial court violated his rights under the
> Sixth, Eighth, and Fourteenth Amendments to the United States
> Constitution when it held that the waiver of counsel was adequate
> and permitted the Petitioner to represent himself.

> **Third Ground for Relief:** James R. Taylor, Sr.'s, rights to a fair trial
> and due process under the Fifth, Sixth, Eighth and Fourteenth
> Amendments were violated when, after the trial court made the initial
> determination that it would permit Petitioner to represent himself,

1

because of Petitioner's subsequent actions it became clear that he was not competent to represent himself and had not made a knowing and intelligent decision concerning self-representation. Yet, until the mitigation phase of the case, the trial court did not call a halt to this travesty and either reappoint Petitioner's original counsel or simply appoint new counsel.

**Fourth Ground for Relief:** James R. Taylor, Sr.'s, rights under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments were violated because, from the outset of the proceedings, Petitioner exhibited an inability to make rational decisions to assist his attorneys and to aid his defense at the trial and sentencing. From the outset, Petitioner was incompetent to stand trial. The trial court erred to Petitioner's prejudice in ruling otherwise.

**Fifth Ground for Relief:** James R. Taylor, Sr.'s, rights under the Fifth, Sixth, Eighth and Fourteenth Amendments were violated when the trial court made no provision for the Petitioner's inability to hear during the trial proceedings.

**Sixth Ground for Relief:** James R. Taylor, Sr.'s, rights under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments were violated when the trial court held numerous conferences off the record.

**Seventh Ground for Relief:** James R. Taylor, Sr.'s, rights under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution, in particular his right to confront witnesses and to compulsory process were violated when the trial court refused to let him recall his wife who had testified for the prosecution and when the court limited other evidence that Petitioner wanted to present.

**Eighth Ground for Relief:** James R. Taylor, Sr.'s, rights under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments were violated because, once the court refused to appoint either new counsel or reappoint standby counsel for the Petitioner's representation, the court had an obligation to ensure that Petitioner received a fair trial and could effectively represent himself without intentional, unlawful or unconstitutional interference by state actors, namely jail personnel.

**Ninth Ground for Relief:** James R. Taylor, Sr.'s, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments Rights were violated and he was denied and fair and impartial trial during the mitigation phase because the trial court permitted the prosecutor to introduce highly prejudicial evidence from the initial phase of the capital proceeding.

**Tenth Ground for Relief:** James R. Taylor, Sr.'s, constitutional rights under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments were violated when the court made errors and omissions in several of the culpability phase jury instructions.

**Eleventh Ground for Relief:** James R. Taylor, Sr.'s, constitutional rights as guaranteed by the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments were violated when the trial court made multiple errors during the pretrial, trial and mitigation phases of his capital trial.

**Twelfth Ground for Relief:** James R. Taylor, Sr., was denied his right to effective assistance of counsel in his direct appeal to the Supreme Court of Ohio in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

**Thirteenth Ground for Relief:** The proportionality review that the Ohio Supreme Court must conduct pursuant to Ohio Revised Code § 2929.05 is fatally flawed. Therefore, James R.Taylor, Sr.'s, death sentence must be vacated pursuant to the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

**Fourteenth Ground for Relief:** James R. Taylor, Sr.'s, death sentence is constitutionally infirm because Ohio's capital punishment system operates in an arbitrary, capricious and discriminatory manner in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments.

(Petition, Doc. No. 12, at ii-iv.)

## Procedural History

Petitioner was indicted by the Greene County Grand Jury on February 20, 1998, and charged with two counts of aggravated murder with the capital specification that they were committed as part of a course of conduct involving the purposeful killing or attempt to kill two or more persons in violation of Ohio Revised Code § 2929.04(A)(5). These counts relate to the shooting deaths of Ronald and Carolyn Rihm. The indictment also charged one count of attempted aggravated murder relating to Petitioner's attempt to shoot his estranged wife, and one count of attempted murder for the attempt to kill James Tipton, who was shot while attempting to wrestle the firearm away from

Petitioner on the night of the shootings.

The charges were tried to a jury in February, 1999, with Petitioner representing himself throughout the guilt phase. On February 23, 1999, the jury returned guilty verdicts on all counts and specifications. The trial court then appointed standby counsel to actually represent Petitioner in the mitigation phase. After hearing the evidence in the penalty phase, the jury returned a sentencing-phase verdict in which it concluded that the aggravating circumstances of the two capital offenses outweighed the mitigating factors and it recommended a sentence of death, which the trial judge imposed on April 6, 1999.

Petitioner appealed directly to the Ohio Supreme Court which described the relevant background facts as follows:

> On the evening of February 14, 1998, appellant waited for his estranged wife, Pat Taylor, to appear at the Fraternal Order of Eagles Lodge in Fairborn, Ohio. Pat arrived at the Eagles and sat at a table with Ronald and Carolyn Rihm, with whom she had been living since separating from appellant the previous month. When Pat refused to let appellant sit with her, appellant produced a gun and fired shots toward Pat and both of the Rihms. While the shot towards Pat missed, Carolyn and Ronald Rihm were each shot in the head and died instantly. James Tipton, who was also seated at the table, was shot in the arm while attempting to subdue appellant.
>
> I. Facts and Case History
>
> At the time of the crimes, appellant and Pat Taylor had been married for approximately 46 years. Pat left appellant on January 19, 1998, and moved in with friends Ron and Carolyn Rihm in their trailer home in Riverside. According to Pat, appellant resented her socializing with the Rihms and had argued with her about going out with them.
>
> On January 21, 1998, appellant hired a private investigation company owned by Robert Beckett to locate Pat. Beckett found that Pat was living with the Rihms; appellant continued employing Beckett's investigation company through February 14.
>
> Ron Rihm's mother, Lenore, saw appellant at church during January

of 1998. In an unsolicited comment, appellant told her, "It's Ronny's fault. Ronny's fault. It's all Ronny's fault."

 Appellant leased rental cars through Enterprise Rent-A-Car on eight separate occasions from early January to mid-February 1998. Appellant told a friend, James Kovacs, that he was renting cars to locate his wife. He asked Kovacs to help him hide the rental car numbers with tape so that the cars would not be recognized.

Kovacs knew appellant through their mutual association with the Eagles in Fairborn. Kovacs had drinks with appellant several times at the Glass Crutch bar in the weeks leading up to the murders. Appellant told Kovacs in late January that he and his wife were splitting up, and appellant was "very upset" about it. Appellant talked about committing suicide "off and on." Taylor told Kovacs "quite a few times" that "if he caught [Pat] with anybody else, he'd kill them both." Appellant also told Kovacs that he did not care for the fact that some people were taking care of his wife. "They were interfering with his wife and his marriage," Kovacs testified.

On February 14, 1998, appellant phoned Beckett "half a dozen or more" times. Appellant wanted to send Pat flowers and wanted Beckett to phone her to see whether she would accept them; Beckett refused. During one of the calls, appellant told Beckett to follow Pat to see if she was going to the Valentine's Day dance at the Eagles lodge that night. Beckett instructed one of his investigators, Ed Probst, to conduct surveillance on Pat. Late that afternoon, Probst began watching for Pat outside the Rihms' trailer.

Meanwhile, appellant was meeting Kovacs at the Glass Crutch bar. Appellant clandestinely handed Kovacs, a Vietnam veteran familiar with firearms, two bullets and asked him what the differences were between them. Kovacs told appellant that the regular bullet would shoot straight into a body but that the hollow point bullet "mushrooms, like explodes." When appellant asked if it would "tear something up," Kovacs indicated that it would. Appellant also asked Kovacs if he would phone the place where his wife was staying, but Kovacs declined to do so. The two chatted a little more; then, appellant left the bar.

Just after 7:00 p.m., Probst saw five people leave the Rihms' trailer in a van. He followed the van to the Eagles lodge. After the van had arrived at the Eagles, at approximately 7:40 p.m., Probst phoned Beckett, who advised him to wait outside the Eagles lodge "and see what happens." After talking with Probst, Beckett got a call from appellant, who asked him if he had heard anything. Beckett told

5

appellant that Pat had arrived at the Eagles, to which appellant replied, "I know that. I'm here." The phone then went dead.

Bob West and his date, Sandy Spangler, rode with the Rihms and Pat to the Valentine's Day dance at the Eagles. James Tipton and his date followed the group in a different car. Upon arriving at the social hall, the group gathered at a table in the corner of the hall where the Rihms usually sat. Joan Brest, a member of the Eagles, was at the lodge with her husband. She noticed appellant there and thought he "looked like he was mad at the world."

Tipton, his date, and Pat sat on one side at the Rihms' table, Ron sat opposite Tipton, and Carolyn, West, and Spangler sat next to Ron. Appellant was sitting at a nearby table and requested that Ron ask Pat if he could sit down with her. Pat replied, "Tell him not to start."

Appellant stood up, went to the end of the Rihms' table, pulled a gun out of his pocket, and with his arm extended, fired the gun towards Pat. The shot missed Pat and hit a mirror on the wall. Appellant then turned to his right and shot Carolyn in the head. He then turned further to his right and shot Ron in the head. At no point during these three shots did anyone touch appellant.

After the third shot, Tipton grabbed appellant's gun, and the two men struggled. As appellant tried to point the gun at Tipton's body, he fired a fourth shot. The shot broke bones in Tipton's upper arm. Several others in the hall joined in the struggle to subdue appellant, who at one point was struck on the head with a pool cue. Those subduing appellant finally got the gun away from him. Shortly thereafter, the Fairborn police arrived and handcuffed Taylor. Terry McVay, who had struck appellant with the pool cue, heard him say, "Go ahead and kill me. My life is over with anyway." Paula Mercer, who was helping Tipton, heard appellant ask "where his (expletive) gun was."

Paramedics dispatched to the Eagles determined that both Ron and Carolyn Rihm were dead at the scene. Both died as a result of penetrating gunshot wounds to the head.

The bullets recovered from the Rihms and from the wall in the Eagles lodge were hollow point bullets. The gun recovered at the scene was a Davis Model P380, caliber .380 semi-automatic pistol, jammed by a cartridge casing. Tests conducted on the gun indicated that the recovered bullets were fired from appellant's gun.

After apprehending appellant, police took him to a hospital and advised him of his *Miranda* rights, which he acknowledged he understood. At the hospital, appellant made several unsolicited,

> spontaneous statements to a police officer: "This was all her fault.
> Why did she do this to me. Six hours at a Christmas dance was too
> long. She did me wrong." Appellant also said several times,
> unsolicited: "I just wish my wife would have just talked to me. I love
> that woman." While at the hospital, an atomic absorption test on
> appellant's hands indicated the presence of gunshot residue.

*State v. Taylor*, 98 Ohio St. 3d 27, 27-30, 781 N.E. 2d 782 (2002). That court affirmed both the

conviction and the sentence of death.

A subsequent petition for writ of *certiorari* to the United States Supreme Court was denied.

*Taylor v. Ohio*, 538 U.S. 1062 (2003). Petitioner filed a post-conviction relief petition under Ohio

Revised Code § 2953.21 in the trial court on February 22, 2000. After it was denied, he appealed

to the Greene County Court of Appeals, which affirmed after a remand for consideration by the trial

court of a motion for relief from judgment. *State v. Taylor*, 2001 Ohio App. LEXIS 2920 (Ohio

App. 2nd Dist. June 29, 2001). The Ohio Supreme Court declined to exercise jurisdiction over the

appeal. On March 17, 2003, Petitioner filed an application to reopen his direct appeal in the Ohio

Supreme Court which was denied on May 16, 2003.

The Petition to this Court followed on May 14, 2004. After the pleadings (Doc. Nos. 12, 18,

19, and 24) were complete, Petitioner sought leave to conduct discovery, which the Court granted

in part (Doc. Nos. 20, 37). Petitioner did not move for an evidentiary hearing and the parties briefed

the merits (Doc. Nos. 52, 53, 55), thus making the case ripe for decision.

**Generally Applicable Law**

**Constitutional Claims Decided on the Merits in the State Courts**

To preserve a claim for federal habeas review, a criminal defendant must first fairly present that claim to the state courts and exhaust any remedies the State may provide. The United States Supreme Court has recently elaborated on the standard of review of state court decisions on such claims later raised in federal habeas corpus:

> The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under law. See *Williams v. Taylor,* 529 U.S. 362, 403-404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). To these ends, § 2254(d)(1) provides:
>
>> "(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."
>
> As we stated in *Williams,* § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S., at 404-405, 120 S.Ct. 1495. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. *Id.,* at 405-406, 120 S. Ct. 1495. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular

8

case. *Id.,* at 407-408, 120 S.Ct. 1495.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one. *Id.,* at 409- 410, 120 S.Ct. 1495.  See also *id.,* at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

*Bell v. Cone*, 535 U.S. 685, 693-94 (2002).

AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. *Williams v. Taylor, supra,* at 405; *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) *(per curiam).* A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner. *Williams v. Taylor, supra,* at 405; *Woodford v. Visciotti,* 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) *(per curiam).*

*Brown v. Payton,* 544 U.S. 133, 134 (2005).  A number of Petitioner's claims were decided on the merits by the state courts.  This Court must therefore decide whether those decisions were contrary to or an objectively unreasonable application of federal law.

9

**Procedural Default**

Conversely, a claim which has not been properly presented to the state courts is subject to the defense in habeas corpus that it has been procedurally defaulted. The Warden has raised that defense as to a number of Petitioner's Grounds for Relief.

The standard for evaluating a procedural default defense is as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107 (1982); *Wainright v. Sykes*, 433 U.S. 72, 87 (1977); *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000). *Wainright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963).

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright v. Sykes*, 433 U. S. 72 (1977). *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155 (6th Cir.

1994); *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
> . . .
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> . . .
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d, at 138.

**Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the effective assistance of counsel.  Assertions that counsel at trial or on direct appeal have been ineffective can impact capital habeas litigation either as direct claims or when asserted to prove cause and prejudice to excuse a procedural default.

The governing standard for effective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential.  . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

12

466 U.S. at 689.

> As to the second prong, the Supreme Court held:
>
> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *See Smith v. Murray*, 477 U.S. 527 (1986). However, failure to raise an issue can amount to ineffective assistance. *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), *citing Joshua v. Dewitt,* 341 F.3d 430, 441 (6th Cir. 2003); *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle,* 171 F.3d 408, 427-29 (6th Cir. 1999).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner

must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674(6th Cir. 2000), *citing Strickland* and *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). "Counsel[s'] failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004), *citing Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001), *cert. denied,* 535 U.S. 940 (2002). "Counsel's performance is strongly presumed to be effective." *McFarland, quoting Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)(*citing Strickland*). To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel "ignored issues [which] are clearly stronger than those presented." *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

## Analysis

## First Ground for Relief

In his First Ground for Relief, Petitioner asserts that the right to represent oneself in a criminal case, recognized by the Supreme Court in *Faretta v. California,* 422 U.S. 806 (1975), should not apply where a defendant wishes to try a capital case while representing himself. Specifically he contends "Supreme Court precedent that permits a defendant to represent himself in his trial should be revisited when that trial is a capital murder trial." (Petition, Doc. No. 12, at

14

14.)

Respondent contends that this claim is procedurally defaulted because it was never raised in the Ohio courts. Petitioner does not claim that he raised this ground for relief in the state courts, nor does he attempt to show cause and prejudice excusing that failure. Therefore, the First Ground for Relief is procedurally defaulted.

Alternatively, the First Ground for Relief is without merit. The Supreme Court has expressly recognized that *Faretta* applies in capital cases. *Godinez v. Moran*, 509 U.S. 389 (1993). Petitioner asserts *Godinez* can be distinguished because there the defendant desired to plead guilty. However, the asserted distinction is without merit. In *Godinez*, the Supreme Court held that the standard for competency to stand trial, to waive counsel, and to plead guilty are all the same and repeatedly cited *Faretta* as applicable to capital cases.

Finally, Petitioner asks this Court to revisit *Faretta*. That we lack the power to do. Trial courts are obliged to follow precedent set by Supreme Court and Courts of Appeals. "Unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375 (1982); *Litman v. Massachusetts Mut. Life Ins. Co.*, 825 F.2d 1506 (11th Cir. 1987). Even if the United States Supreme Court were to revisit *Faretta*, its ruling would not be applicable to this case because of the Court's retroactivity doctrine. *See Teague v. Lane*, 489 U.S. 288 (1989). The First Ground for Relief should therefore be denied.

## Second Ground for Relief

In his Second Ground for Relief, Petitioner asserts his waiver of counsel in this case was neither knowing nor intelligent and is therefore invalid.

The Ohio Supreme Court decided this claim on direct appeal as follows:

> In appellant's sixth proposition of law, he argues that the trial court erred by allowing him to represent himself at trial, since there is a real question as to whether he proceeded intelligently. Appellant asserts that his self-representation actually aided the state in making its case against him and that his statements to the press and jury suggest that he engaged in a "state-supported suicide." Appellant relies on *State v. Shank* (La.1982), 410 So. 2d 232, in asserting that a death sentence is improper when a defendant represents himself in order to gain a sentence of death.
>
> The Sixth and Fourteenth Amendments to the United States Constitution guarantee a state criminal defendant the constitutional right of self-representation when the defendant voluntarily, knowingly, and intelligently so elects. *State v. Gibson* (1976), 45 Ohio St.2d 366, 74 Ohio Op. 2d 525, 345 N.E.2d 399, paragraph one of the syllabus, citing *Faretta v. California* (1975), 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562. To establish an effective waiver of counsel, the trial court must determine whether the defendant fully understands and intelligently relinquishes his right to counsel. *Gibson*, paragraph two of the syllabus.
>
> As previously discussed, appellant first declared his desire to act as his own attorney at the May 13, 1998, hearing. At that time, appellant was upset that defense counsel had filed several motions and had requested a continuance; appellant wanted his trial to be "over with." The trial court then held no fewer than four hearings involving the issue of appellant's right to waive counsel and represent himself *pro se*. During these hearings, appellant was repeatedly advised by defense counsel and the trial court that self-representation was not a wise decision, nor in his best interest. Even after the trial had begun, the court suggested to appellant that he allow counsel to represent him; however, appellant emphatically refused.
>
> Appellant asserts that his decision to represent himself was not "a

16

good idea." We agree. The issue, however, is not whether appellant made a wise decision; rather, it is whether he "fully understands and intelligently relinquishes" his right to counsel. *Gibson*, 45 Ohio St.2d 366, 74 Ohio Op. 2d 525, 345 N.E.2d 399, paragraph two of the syllabus. Appellant was warned several times that representing himself was a dangerous course to pursue, yet he persisted in self-representation.

The trial court held a competency hearing to determine appellant's competence to stand trial. At that hearing, Dr. Jeffrey Smalldon opined that appellant was not capable of assisting counsel in his own defense. However, another psychologist, Dr. Susan Perry Dyer, testified that appellant was competent to stand trial, even though he was "likely personality disordered." Moreover, Dr. Dyer opined that appellant "is capable to work with defense counsel to mount a defense."

At the July 22, 1998, hearing, the court discussed the law on self-representation and then interrogated appellant about his background, motivations, and desire to proceed without counsel. Appellant insisted that he wanted to cross-examine witnesses and testify, contrary to the advice of defense counsel. He paraphrased language from the Revised Code that the defendant has the right to cross-examine any witness, and claimed he was being denied this right. He further told the court that he had once represented himself in a hearing at the Eagles lodge.

Then, at the August 17, 1998, hearing, the trial court again questioned appellant about his desire to waive counsel and to represent himself. While appellant conceded the need for counsel, he said that he would agree to let counsel stay on only if counsel would allow him to ask questions of witnesses along with them. The court refused to allow hybrid representation. As noted in our discussion of appellant's third proposition, the United States and Ohio Constitutions do not provide for such an arrangement. See, e.g., *Thompson,* 33 Ohio St.3d at 6, 514 N.E.2d 407. The trial court did not err in refusing to allow hybrid representation. On the other hand, the right to self-representation is constitutionally mandated under *Faretta*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562.

In any event, appellant insisted at the August 17 hearing that "there are some witnesses that I need to question myself." Appellant even acknowledged, "I'm probably making a bad decision doing this, but it's the only decision that I can make. * * * I'm being forced to do it

17

because this is the only chance that I have got to try to prove things in here that has happened. * * * I'm giving up my life, if I don't do it, Your Honor." In this last declaration by appellant, it is clear that he is not giving up counsel in order to ensure that he would get the death penalty. The record reveals that appellant's situation and motivation for wanting to act *pro se* are distinguishable from the defendant in *Shank*.

After the trial court reviewed each aspect of the waiver of counsel with appellant, he signed and dated the written waiver at the August 17 hearing. We find that the record amply demonstrates that appellant fully understood and voluntarily and knowingly relinquished his right to counsel. *Gibson*, 45 Ohio St.2d 366, 74 Ohio Op. 2d 525, 345 N.E.2d 399, paragraph two of the syllabus. Thus, his waiver of counsel was valid.

Ruling as appellant requests would undermine the constitutional guarantee to self-representation identified in *Faretta* that we followed in *Gibson*. The fact that appellant's decision to waive counsel and represent himself at trial was "not a good idea" is not the standard by which courts adjudicate this issue. Self-representation by a defendant is seldom "a good idea." Both the state and federal constitutions, however, guarantee such a right to defendants with a valid waiver of counsel, regardless of the wisdom of such a decision. For these reasons, we reject appellant's sixth proposition.

*State v. Taylor*, 98 Ohio St. 3d at 34-37.

The question before this Court, then, is whether the Ohio Supreme Court's application of *Faretta* was objectively unreasonable. The Magistrate Judge concludes that it was not.

First of all, before the exercise of the right to self-representation is accepted, the defendant "should be made aware of the disadvantages of self-representation, . . . ." *Faretta,* 422 U.S. at 835. Obviously, any time a criminal defendant wants to exercise his right of self-representation, the trial judge in the case faces a very difficult task of balancing that right against the almost-certain fact that it is a bad idea, a strategic mistake, to exercise that right. The task is even more difficult in a capital case because there is so much more that good counsel can do, indeed must do, for a capital

18

defendant. *See, e.g.*, *Wiggins v. Smith,* 539 U.S. 510 (2003). The Supreme Court in *Faretta* recognized that it was almost always a poor strategic choice to proceed *pro se*. "It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." 422 U.S. at 834. Petitioner does not now complain that the trial judge failed to explain the disadvantages of proceeding on his own.

If doubts as to a defendant's competence arise from the trial court's inquiry into his desire to proceed *pro se*, then the court must make a competency determination before proceeding. *Godinez, supra*. The standards for mental competence to stand trial and to waive counsel are the same. *Id*. Here the trial judge ordered a competency evaluation, considered competing expert testimony on the Petitioner's competence, and made a final determination that he was competent before allowing him to proceed *pro se*. A fuller discussion of the competency issue is found at the Fourth Ground for Relief, *infra*.

Finally, a defendant cannot exercise his right to self-representation without first validly giving up his right to be represented by counsel, which means he or she must "knowingly and intelligently" forego the benefits associated with the right to counsel. *Faretta*, 422 U.S. at 835, *citing Johnson v. Zerbst,* 304 U.S. 458, 464-465 (1938), and *Von Moltke v. Gillies*, 332 U.S. 708, 723-724 (1948).

In this case the trial court made a meticulous inquiry into Petitioner's understanding of what the case was about, why he wanted to proceed *pro se*, and what he understood he was giving up by proceeding *pro se*. As noted by the Ohio Supreme Court, the trial judge held at least four separate hearings on the question. At first the Petitioner's desire to proceed on his own appear to have been prompted by his frustration at his counsel's request for a continuance and his own contrary desire

to have the trial over.  But the judge did not accept that initial expression of intent, instead giving Petitioner time to think about it and to try to work out his differences with his counsel.  That plainly distinguishes this case from *Fowler v. Collins*, 253 F.3d 244 (6th Cir. 2001), relied on by Petitioner (Petitioner's Merit Brief, Doc. No. 52, at 21), where the state trial court judge seemed eager to accept the waiver of counsel and made only a cursory inquiry into the reasons why the defendant wished to do so and his understanding of the consequences.

After conducting those hearings and trying repeatedly to dissuade Petitioner from exercising his right to self-representation, the trial judge concluded his waiver of counsel was knowing, intelligent, and voluntary.  While that determination is a mixed question of fact and law, a good deal of deference is due to the trial judge's understanding of the Petitioner's mindset after this extended discussion.

In seeking habeas relief, Petitioner makes a brief argument that his choice was not voluntary by pointing to various places in the transcript where he said he was being "forced" into it.  While a waiver of counsel must be voluntary, any argument that this waiver was not voluntary is  beyond the scope of what was argued to the Ohio Supreme Court, where Petitioner claimed only that his waiver was not intelligently made.

Moreover, any claim the choice was involuntary is belied by the record.  Petitioner insisted that he be allowed to examine some "witnesses" personally, and counsel for both parties identify the relevant witness as his estranged wife.  There is no constitutional right to hybrid representation, where a defendant examines some witnesses and his counsel examines others.  The Ohio Supreme Court decided this point in considering Petitioner's third proposition of law as follows:

> [T]he trial court acted properly in refusing to allow hybrid
> representation, whereby defendant would have acted as "cocounsel"

along with counsel. Neither the federal nor state constitution mandates a right to such representation. See *State v. Thompson* (1987), 33 Ohio St.3d 1, 6, 514 N.E.2d 407*, citing *McKaskle v. Wiggins (1984),* 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122. See, also, *State v. Landrum* (1990), 53 Ohio St.3d 107, 119, 559 N.E.2d 710; *State v. Keenan* (1998), 81 Ohio St.3d 133, 138, 1998 Ohio 459, 689 N.E.2d 929. Accordingly, we reject appellant's third proposition.

*State v. Taylor*, 98 Ohio St. 3d at 34. That is a correct application of federal law and Petitioner does not contest it in this habeas action. Mr. Taylor wanted to proceed with hybrid representation, but the law does not allow it. In that sense, the law "forced" him to choose between being represented by counsel and self-representation. However, a choice which the law requires is not made involuntary by that fact.

The claim which was presented to the Ohio Supreme Court and which is therefore preserved for habeas review is that the waiver of counsel was not intelligent. Petitioner emphasizes now that he had less than a tenth grade education, but Respondent notes he worked thirty years in a skilled trade as an electrician and conceded he had no trouble reading and writing.

Petitioner argues that *Faretta* can be distinguished in that the charge there was theft and that Mr. Faretta had a better formal education than Petitioner had defended himself before. Of course, as noted above, *Godinez* applied *Faretta* in a capital context. *Godinez v. Moran*, 509 U.S. 389 (1993). The Supreme Court has not adopted any *per se* rules in this area; the exercise of *Faretta* rights must be decided on a case-by-case basis.

Petitioner notes he told the trial judge he was sixty-eight years old and had some memory problems. Absolutely no adverse inference about Petitioner's intelligence can be drawn from his age. As for his understanding of the legal process, while he was not as familiar as Mr. Faretta, who apparently was a career criminal, he had served five times on a jury. It appears the comment about

21

memory was the offhand comment many people make as it is not supported by any record references to critical matter which the Petitioner could not remember.

Petitioner notes places in the transcript where he evinced lack of knowledge of some particular aspect of the proceedings. That also is not surprising. Capital litigation is extremely complex, to the point that the Ohio Supreme Court requires separate training and certification for appointment in these cases even from skilled and experienced criminal defense attorneys. The Court notes that the trial judge in *Faretta* decided not to allow self-representation after a hearing in which he found that Mr. Faretta knew nothing about the hearsay rule and was confused on jury empaneling. 422 U.S. at 807, n.2. The Supreme Court reversed despite these misunderstandings of legal process, emphasizing that the personal right to defend oneself was fundamental to the Founders' understanding of fair criminal process.

Petitioner relies on *Patterson v. Illinois*, 487 U.S. 285 (1988), and *Brewer v. Williams*, 430 U.S. 387 (1977), for the proposition that waivers of the constitutional right to counsel are not to be presumed (Petitioner's Merit Brief, Doc. No. 52, at 36). In *Patterson*, the Court held that post-indictment *Miranda* warnings, acknowledged and waived in a standard waiver form, were sufficient to obtain a valid Sixth Amendment waiver in a murder case. In *Brewer*, the famous "Christian burial speech" case, the Court held defendant's post-indictment statement in response to the speech should have been suppressed because it was given against the advice of counsel by a person who consistently followed counsel's advice. Neither of these cases is apposite. In both, the waivers were given, either explicitly or implicitly, to police interrogators, without any advice from the trial court or inquiry by the trial court into whether the defendant understood what the nature and consequences of his act were.

22

Managing the right to self-representation by correct application of *Faretta* requires a determination that a defendant is acting voluntarily, that he is mentally competent to make the decision, that his act is voluntary, and that it is made intelligently after a thorough explanation of the risks of proceeding *pro se* and the benefits being given up.  The conclusion that a waiver of counsel is knowing, intelligent, and voluntary requires weighing the evidence on all of those factors. Having carefully considered the trial court's application of *Faretta* and the Ohio Supreme Court's affirmance of that application, the Court cannot say that the Ohio courts were objectively unreasonable in reaching the result they did.

The Second Ground for Relief should be denied on the merits.


**Third Ground for Relief**


In his Third Ground for Relief, Petitioner asserts that, after he began his *pro se* defense, the trial judge should have insisted he accept counsel;[1] his performance was so poor that his waiver could not have been knowing and intelligent.

In arguing this claim, Petitioner points to numerous instances of serious mistakes he made during trial (Petitioner's Merit Brief, Doc. No. 52, at 37-51).  He also adverts to the deposition testimony of Kort Gatterdam and Larry Dehus, taken in these habeas proceedings, to show that he was not competent to defend himself.  (Mr. Gatterdam is a very experienced capital defense attorney; Mr. Dehus was the forensic scientist appointed by the Common Pleas Court to assist

---

[1]The trial court did, of course, appoint counsel for the mitigation phase of trial, the same counsel who acted in a standby capacity during the guilt phase.

Petitioner in preparing for trial.)

Respondent first asserts that this claim has been held to be procedurally defaulted by the Greene County Court of Appeals when it concluded the claim was barred from consideration in Petitioner's Ohio Revised Code § 2953.21 proceeding because it depended solely on matters of record but was not raised on direct appeal. That accurately represents the holding of the appellate court. *State v. Taylor*, 2001 Ohio App. LEXIS 2920 at *16.

Petitioner makes the bare assertion that this claim is not procedurally defaulted (Petitioner's Response to Warden's Merit Brief, Doc. No. 55, at 13). He then contends that any default can be excused by the ineffective assistance of appellate counsel. *Id*. While ineffective assistance of appellate counsel can excuse a procedural default in failing to raise a claim on direct appeal, the ineffective assistance claim must first be adjudicated in state court, if the state provides a mechanism for doing so; ineffective assistance of appellate counsel claims are themselves subject to procedural default if not raised in appropriate state court proceedings. *Edwards v. Carpenter,* 529 U.S. 446 (2000). Ohio provides such a mechanism by allowing an application to reopen the direct appeal to raise such claims. *State v. Murnahan*, 63 Ohio St. 3d 60, 584 N.E. 2d 1204 (1992); Ohio Sup. Ct. Prac. R. XI, § 5(for ineffective assistance on direct appeal to the Ohio Supreme Court); Ohio App. R. 26(B)(for ineffective assistance on direct appeal to the intermediate court of appeals). Petitioner filed such an application. (Appendix to the Return of Writ, Vol. 9.) However, he did not assert this ground for relief as one of the propositions of law which should have been raised on direct appeal. Thus he procedurally defaulted in presenting this claim to the Ohio courts and cannot rely on the

24

asserted ineffectiveness of his appellate counsel in presenting it to excuse the default.[2]

The Third Ground for Relief should be dismissed as procedurally defaulted.

## Fourth Ground for Relief

In his Fourth Ground for Relief, Petitioner asserts that he was not mentally competent to stand trial.

A person who is mentally incompetent may not be tried for a crime so long as the incompetence continues. *Bishop v. United States*, 350 U.S. 961 (1956). This fundamental right, now protected by the Due Process Clause of the Fourteenth Amendment, has firm roots in the common law. *Drope v. Missouri*, 420 U.S. 162, 171 (1975), *citing* 4 Blackstone, Commentaries 24. To protect this right, a State must adopt and observe adequate procedures for determining whether a person is competent to stand trial. *Pate v. Robinson*, 383 U.S. 375 (1966). It is not unconstitutional to presume competence, as Ohio law does, and to place the burden of proving incompetence on a criminal defendant. *Medina v. California*, 505 U.S. 437 (1992). A determination of competence is a factual finding to which deference must be paid in habeas proceedings. *Filiaggi v. Bagley*, 445 F.3d 851, 858 (6th Cir. 2006), *citing Thompson v. Keohane*, 516 U.S. 99, 110-11 (1995). "Regardless of whether we would reach a different conclusion were we reviewing the case *de novo*, the findings of the state court must be

---

[2] Nor can he rely on the failure of his counsel on application for reopening as ineffective assistance of appellate counsel, excusing his default in presenting the claim on application for reopening. By analogy to applications to reopen under Ohio R. App. P. 26, an application for reopening in the Ohio Supreme Court is a collateral attack on the judgment and not a part of direct review. *Morgan v. Eads*, 104 Ohio St. 3d 142, 818 N.E. 2d 1157 (2004). Therefore, Petitioner was not entitled to counsel on the application for reopening and any ineffectiveness on their part does not violate the Sixth Amendment. *Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005)(*en banc*), reversing *White v. Schotten*, 201 F. 3d 743 (6th Cir. 2000).

upheld unless there is clear and convincing evidence to the contrary." *Id*. quoting *Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001).

The standard for competency to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960)

Respondent asserts that this Ground for Relief, like the Third, is procedurally defaulted, claiming it was not raised at all on direct appeal and was improperly raised in post-conviction review (Warden's Merit Brief, Doc. No. 53, at 53-55). Examination of the record shows that this claim was in fact not raised on direct appeal or was raised in such a cursory fashion that it was not given separate attention by the Supreme Court. When he raised this claim for the first time in post-conviction, Petitioner relied on evidence which was already of record. The Court of Appeals held it was barred by Ohio's criminal *res judicata* rule which requires matters to be raised on direct appeal when they can and bars raising matters in post-conviction which could have been raised on direct appeal. *State v. Taylor*, 2001 Ohio App. LEXIS 2920 at *16 (Ohio App. 2nd Dist. June 29, 2001).

As with the Third Ground for Relief, Petitioner responds that it was ineffective assistance of appellate counsel to fail to raise this claim on direct appeal (Petitioner's Reply Brief, Doc. No. 55, at 16). As to this claim, however, Petitioner's counsel on the Application for Reopening did assert it was ineffective assistance of direct appeal counsel not to include the following proposition of law:

> When evidence presented at a competency hearing reveals that the defendant does not understand the nature and objective of the proceedings against him and the defendant cannot assist his counsel in his defense, a trial court errs by finding the defendant competent to stand trial. U.S. Const. amends. VI, VIII, XIV; Ohio Const. Art. I, §§9, 16.

(Application for Reopening, Appendix to Return of Writ, Vol. 9, at 6.)  The Ohio Supreme Court denied the Application for Reopening without opinion (Entry, Appendix to Return of Writ, Vol. 9, at 34).

A state court decision can constitute an "adjudication on the merits" entitled to deference under 28 U. S. C. § 2254(d)(1) even if the state court does not explicitly refer to the federal claim or to relevant federal case law.  "'Adjudicated on the merits' has a well-settled meaning: a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  *Sellan v. Kuhlman*, 261 F.3d 303 (2nd Cir. 2001). Under the Supremacy Clause, state courts are obligated to apply and adjudicate federal claims fairly presented to them.  *Sellan, citing Testa v. Katt,* 330 U.S. 386 (1947). *Compare McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003)(if the state court does not rule on a federal claim before it, federal review of that claim is *de novo*, rather than deferential).

Treating the Ohio Supreme Court's denial of the Application for Reopening as an adjudication on the merits, the Court must decide if it was contrary to or an unreasonable application of clearly established federal law.

This Court cannot say that the failure to raise on direct appeal Petitioner's alleged incompetence to stand trial was so clearly ineffective assistance of appellate counsel that the Ohio Supreme Court's adjudication of this claim is an unreasonable application of clearly established federal law.  Appellate counsel did not have a record in which the trial judge had ignored clear signs of incompetence; rather, there was a developed record with conflicting psychological evaluations.  Based on such a record, the determination of competency by the trial judge was one on which the appellate court was likely to defer

27

to the trial judge and thus the claim of incompetency was not a "dead-bang winner."  Because the Ohio Supreme Court's adjudication of the ineffective assistance of appellate counsel claim was not objectively unreasonable, it is entitled to deference under 28 U.S.C. § 2254(d)(1).

Petitioner makes no response to the Warden's alternative procedural default defense, to wit, that the claim was barred in post-conviction because it could have been raised on direct appeal.  Applying *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), the Court notes that Ohio does have an established criminal *res judicata* rule which was applied to Petitioner's claim to bar it in post-conviction proceedings.  *State v. Perry*, 10 Ohio St. 2d 175, 226 N.E. 2d 104 (1967)(emphasis *sic*.).  *See also State v. Cole*, 2 Ohio St. 3d 112, 443 N.E. 2d 169, 170 (1982);  *State v. Duling*, 21 Ohio St. 2d 13, 254 N.E. 2d 670 (1970).   The *Perry* rule has been repeatedly upheld in the Sixth Circuit as an adequate and independent state rule. *White v. Mitchell*, 431 F.3d 517 (6th Cir.  2005), *citing Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent*, 17 F. 3d 155, 160-61 (6th Cir. 1994); *Van Hook v. Anderson*, 127 F. Supp. 2d 899 (S.D. Ohio 2001); *Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003); *Coleman v. Mitchell*, 268 F.3d 417, 429 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994); *Van Hook v. Anderson*, 127 F. Supp. 2d 899 (S.D. Ohio 2001).  Petitioner has not attempted to show cause and prejudice to excuse this procedural default.

The Court concludes that the Fourth Ground for Relief should be dismissed with prejudice as procedurally defaulted.

**Fifth Ground for Relief**

In his Fifth Ground for Relief, Petitioner asserts he was denied due process of law when the trial court failed to make an appropriate provision to compensate for his hearing difficulty (Petitioner's Merit Brief, Doc. No. 52, at 61-66). Petitioner cites to twenty page references in the trial transcript that reflect he had difficulty hearing something, out of a transcript of over 2,500 pages.

This claim was presented to the Ohio Supreme Court which ruled as follows:

> In his fourth proposition of law, appellant contends that the trial court abused its discretion in failing to accommodate his hearing impairment. Appellant asserts that he was a 68-year-old man suffering from a hearing loss and that he had complained throughout the trial that he was unable to hear questions or statements by the court, the prosecutors and witnesses. Based on the trial court's failure to accommodate his hearing impairment, appellant asserts he was denied his right to confront witnesses under *State v. Schaim* (1992), 65 Ohio St.3d 51, 64, 1992 Ohio 31, 600 N.E.2d 661.

> In spite of appellant's assertion, the record indicates that at no point did he either request an interpreter or any other accommodation for his impaired hearing, nor did appellant request a new trial or proffer expert testimony on his hearing impairment as the defendant did in *Schaim*.

> Moreover, the trial court went to great lengths to accommodate appellant's hearing impairment both before and throughout trial. At the July 6, 1998 hearing, appellant told the court that he was hard of hearing. The trial judge instructed appellant to raise his hand any time that he did not hear the proceedings.

> When trial began, the court addressed appellant, noting, "Mr. Taylor, if you at any point in time have a problem hearing anything that anyone says, * * * please make yourself apparent to the Court. Raise your hand, indicate that you're not hearing things." Shortly thereafter, the court reminded appellant, "Let me know if you're unable to hear." Later, the court observed, "Mr. Taylor, from your questioning, it would appear that you're hearing everything that is going on." Appellant responded, "So far okay."

> On the second day of trial, after appellant had remarked, "I didn't hear," the court addressed appellant, stating, "Mr. Taylor, if you at all at any

point in time have trouble hearing, let me know."

Throughout the entire trial, appellant told the court at various times that he did not hear a question or answer. Whenever this occurred, the question or answer would be repeated.

We believe that the trial court's approach in dealing with Taylor's hearing impairment was not unreasonable, arbitrary, or unconscionable and thus did not amount to an abuse of discretion. *See State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. Appellant did not request an evidentiary hearing or proffer expert testimony on his hearing impairment, as was the case in *Schaim*, and thus waived his right to complain about this issue now. *See State v. Slagle* (1992), 65 Ohio St.3d 597, 605 N.E.2d 916. Furthermore, the record amply indicates that the trial court was cognizant of appellant's hearing impairment and was vigilant in ensuring that appellant hear everything that occurred during his trial. Therefore, we reject appellant's fourth proposition.

*State v. Taylor*, 98 Ohio St. 3d at 37-38.

The Warden asserts this claim is procedurally defaulted (Respondent's Merit Brief, Doc. No. 53, at 60-61). Petitioner counters that the Ohio Supreme Court did not "clearly and expressly state that its judgment rested on a state procedural bar," relying on *Harris v. Reed,* 489 U.S. 255 (1989), and *Manning v. Huffman*, 269 F.3d 720, 724 (6th Cir. 2001)(Petitioner's Merit Brief, Doc. No. 52).

After *Harris v. Reed,* 489 U.S. 255 (1989), "federal courts . . . will presume there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Coleman v. Thompson*, 501 U.S. 722, 735 (1991) quoting *Michigan v. Long*, 463 U.S. 1032 at 1040-1041 (1983). However, *Harris v. Reed* does not preclude a finding that the state procedural rule was actually enforced where the state court decision also relies on an alternative ground. *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000). Although a state court discusses the merits of a claim in the alternative, there can still be procedural default if the state court rules on the procedural ground. *Coe v. Bell,* 161 F.3d 320, 330 (6th

Cir. 1998), *cert. denied,* 120 S. Ct. 110 (1999).

The Ohio Supreme Court decision on this proposition of law explicitly rests on both the procedural bar – failure to make contemporaneous objection – as well as a determination on the merits.

The procedural default ruling is well-supported by the record. Petitioner does not cite to any place in the record where he asked for any accommodation at all for his hearing problem – an interpreter, some sound amplification device, a hearing aid,[3] or anything else. He made it clear he occasionally had trouble hearing and the trial judge gave him repeated instructions to raise his hand and let the court know if he missed something. It is of course a common experience for trial judges to have to intervene to make certain that witnesses are heard, either because others in the courtroom have difficulty hearing or because witnesses are soft-spoken (persistently or because of courtroom-induced nervousness) or because of poor courtroom acoustics. The trial judge could very reasonably have believed – in the absence of any objection or further request from Petitioner – that the accommodation he was making was sufficient.

Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471, 166 N.E.2d 379 (1969), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162, 694 N.E.2d 932 (1998) — is an adequate and independent state ground. *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Cott v. Mitchell*, 209 F. 3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107,

---

[3] Petitioner asserts in his Merit Brief that he has been fitted with a hearing aid in one ear since he has been imprisoned and is awaiting a hearing aid for the second ear (Doc. No. 52 at 64). The Court is given no evidentiary basis for that assertion. Assuming it is true and that the condition of Petitioner now is the same as at the time of trial, the question that occurs to the Court is why Petitioner had not acquired a hearing aid before the events which led to his trial.

124-29 (1982).  See also *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).

Petitioner does not offer any excusing cause and prejudice for his failure to make contemporaneous objection or request for further accommodation.  The Magistrate Judge finds the procedural default defense here to be well taken.

Alternatively, this claim is without merit.  The Ohio Supreme Court decided this as a Confrontation Clause claim under its own precedent, *State v. Schaim*, 65 Ohio St. 3d 51, 64, 600 N.E.2d 661(1992).  The parties have correctly treated *Schaim* as based on federal constitutional law, although it does not cite any United States Supreme Court precedent.  The question then is whether the Ohio Supreme Court's decision on this question is an unreasonable application of clearly established federal law as decided by the United States Supreme Court.  Petitioner cites no Supreme Court case law in his Merit Brief or Reply Brief in support of this claim except *Lockett v. Ohio*, 438 U.S. 586 (1978), and *Woodson v. North Carolina*, 428 U.S. 280 (1976), for the notion that, because "death is different," more process was due Petitioner than he was given.  Neither of these is a Confrontation Clause case; much less do they involve the potential need for perception-enhancing assistance for handicapped defendants. In habeas corpus, this Court does not sit to create new rules of law, but to decide whether the state court resolution of federal questions was "objectively unreasonable."  Petitioner has not shown anything like the severity of hearing impairment demonstrated in Schaim nor any evidence of the quality presented in that case.  He therefore has not shown that the Ohio Supreme Court's resolution of this claim was an objectively unreasonable application of clearly established federal law and the Fifth Ground for Relief should be denied.

## Sixth Ground for Relief

In his Sixth Ground for Relief, Petitioner asserts his constitutional rights were violated because there were a number of unrecorded sidebar conferences during the trial (Petitioner's Merit Brief, Doc. No. 52, at 67-68).  Respondent raises no procedural defenses to this claim, so the Court is free to reach the merits.

The Greene County Court of Appeals decided this question on the merits on appeal from denial of post-conviction relief.  It wrote:

> In his twelfth claim, Taylor claimed that his conviction was void because his trial record was too incomplete to allow him to have meaningful post-conviction review. He asserted that the trial court had stated, on the record, that it had intended to ensure that all matters were properly on the record. Taylor argued, however, that there had been a number of unrecorded sidebars during trial. In support of his argument, he cited numerous pages in the trial transcript.
>
> Taylor does not indicate what matters were discussed in any of the unrecorded sidebars. The mere fact that a sidebar was unrecorded is not proof that crucial information is not in the record. Sidebars are commonly held to discuss general court maintenance issues such as when the next break will take place or when the case will recess for the day. Considering Taylor's lack of legal knowledge, we imagine that the judge held many non-recorded sidebars merely to inform Taylor of proper court procedure and to educate him on the Rules of Evidence and the Rules of Criminal Procedure. Because the judge stated that he would ensure that all matters were properly on the record and because Taylor had standby counsel who could have objected had they believed important sidebar conferences were not being recorded, we believe that any error that could have resulted from the non-recorded sidebars is harmless. *See State v. Brewer*, 1988 Ohio App. LEXIS 3492 (Aug. 26, 1988), Greene App. No. 87-CA-67, unreported,  affirmed (1990), 48 Ohio St. 3d 50, 549 N.E.2d 491.

*State v. Taylor,* 2001 Ohio App. LEXIS 2920 at *25-27.

In arguing this Ground for Relief, Petitioner points to no United States Supreme Court law which

has been unreasonably applied by this decision of the Court of Appeals.  Indeed, his sole citation is to

*Lockett* and *Woodson* for the "death is different" aphorism (Petitioner's Merit Brief, Doc. No. 52, at 67-

68).  Respondent notes that Petitioner is not claiming something prejudicial happened at one or more

of the sidebar conferences; indeed, Petitioner, who participated in all of them, presents no evidence at

all of what occurred.  While Ohio R. Crim P. 22 requires recording all proceedings in a capital case,

there is no federal constitutional right to that effect established by holding of the United States Supreme

Court.  The Sixth Ground for Relief should therefore be denied on the merits.


### Seventh Ground for Relief


In his Seventh Ground for Relief, Petitioner asserts that he was denied his rights under the

Confrontation and Compulsory Process Clauses because the trial judge would not allow him to recall

his wife for further cross-examination, quashed a subpoena for attorney Michael Ellerbrock, and refused

to provide DNA testing of blood from the jacket Petitioner was wearing on the evening of the killings

(Petitioner's Merit Brief, Doc. No. 52, at 69-73).

Respondent contends the three sub-claims within the Seventh Ground for Relief are procedurally

defaulted because they have never been presented to any state court and Petitioner makes no response.

Since these claims all depend on evidence of record, they could have been presented on direct

appeal.  Because they were not, they would have been held barred by the Ohio criminal *res judicata* rule

of *State v. Perry*, 10 Ohio St. 2d 175, 226 N.E. 2d 104 (1967), if they had been presented in the petition

for post-conviction relief under Ohio Revised Code § 2953.21. If Petitioner attempted to present them

now in a successive application for post-conviction relief under Ohio Revised Code § 2953.23, they

would be held barred both because they could have been presented on direct appeal and by Ohio's rule against presenting claims in a successive petition which were available when the first post-conviction petition was filed under Ohio Revised Code § 2953.21.

Therefore the Seventh Ground for Relief should be dismissed with prejudice as procedurally defaulted.

### Eighth Ground for Relief

In his Eighth Ground for Relief, Petitioner asserts that jail personnel at the Greene County Jail interfered with his ability to prepare for trial (Petitioner's Merit Brief, Doc. No. 52, at 74-75). Respondent asserts that this claim is barred by procedural default (Warden's Merit Brief, Doc. No. 53, at 71-73) and Petitioner makes no response.

Petitioner presented this claim to the Ohio courts for the first time in his petition for post-conviction relief and it was held barred under *State v. Perry, supra,* because it could have been raised on direct appeal.  As noted above, the Sixth Circuit has repeatedly held the *Perry* rule to be adequate and independent.

Therefore the Eighth Ground for Relief should be denied with prejudice.

### Ninth Ground for Relief

In his Ninth Ground for Relief, Petitioner asserts that he was denied a fair trial at the mitigation phase because the trial court permitted the reintroduction of highly prejudicial evidence from the guilt phase of the trial (Petitioner's Merit Brief, Doc. No. 52, at 76-79).  Petitioner focuses on the assertedly gruesome nature of the photographs of the crime scene.

The Warden asserts that this claim is also procedurally defaulted because it has never been presented to the Ohio courts.  She concedes that a similar claim of error was made about admitting these photographs during the guilt phase (Warden's Merit Brief, Doc. No. 53, at 74-78).  Petitioner counters that it was ineffective assistance of appellate counsel to fail to present this claim on direct appeal and such ineffective assistance will act as excusing cause and prejudice.

The relevant principles of law are set out above in analysis of the Third Ground for Relief.  In sum, in order to rely on ineffective assistance of appellate counsel as excusing cause, a habeas petitioner must first exhaust that claim in the state courts and the claim is subject to procedural default, whether considered as a substantive claim or to show cause and prejudice.  *Edwards v. Carpenter,* 529 U.S. 446 (2000).  Petitioner did present a claim of ineffective assistance of appellate counsel to the Ohio Supreme Court in his Application for Reopening (Appendix to Return of Writ, Vol. 9, at 3).  However, this particular claim of ineffectiveness was never presented to the Ohio courts as a proposition of law which should have been argued on direct appeal.  *Id*. at 4-5.

Because Petitioner never presented this claim of ineffectiveness to the Ohio courts, he has procedurally defaulted it and is barred from presenting it here as cause.  Therefore his Ninth Ground for Relief should be dismissed with prejudice.

36

**Tenth Ground for Relief**

Petitioner has withdrawn his Tenth Ground for Relief (Petitioner's Merit Brief, Doc. No. 52, at 89.)

**Eleventh Ground for Relief**

In his Eleventh Ground for Relief, Petitioner claims that the trial court errors asserted in Grounds One through Nine, when considered cumulatively, deprived him of due process and rendered the trial unfair (Petitioner's Merit Brief, Doc. No. 52, at 80).

The Warden asserts, without response from Petitioner, that this claim is barred by procedural default in that it was presented for the first time in the petition for post-conviction relief and, because it was based on matters of record which could have been raised on direct appeal, was held barred by the *Perry res judicata* rule (Warden's Merit Brief, Doc. No. 53, at 80-81).

Because the *Perry* rule is an adequate and independent state ground of decision, this Ground for Relief should be denied with prejudice.

**Twelfth Ground for Relief**

In his Twelfth Ground for Relief, Petitioner asserts as a substantive matter that he was denied the effective assistance of appellate counsel (Petitioner's Merit Brief, Doc. No. 52, at 81-88). Respondent concedes in both the Return of Writ and her Merit Brief that this issue is preserved for merit

37

review (Return of Writ, Doc. No. 18, at 80; Warden's Merit Brief, Doc. No. 53, at 82).[4]

As noted above, this issue was raised by Petitioner in the Ohio courts by an Application for Reopening in the Ohio Supreme Court.  Furthermore, the decision of that court denying the Application is appropriately treated as a decision on the merits.  This Court must therefore decide whether the Ohio Supreme Court's decision was an objectively unreasonable application of clearly established federal law.

Although this Ground for Relief in general is preserved for merit review, the Court is limited to considering only those propositions of law omitted from the merit brief on direct appeal which were brought to the Ohio Supreme Court's attention in the Application for Reopening.  As a matter of logic, it cannot have been objectively unreasonable for the Ohio Supreme Court to refuse to allow reopening so that the Petitioner could present an argument on which he did not seek reopening.  To put it another way, Petitioner's claims of ineffective assistance of appellate counsel cannot be broader before this Court than they were in the Application for Reopening before the Ohio Supreme Court.

In his Merit Brief, Petitioner lists the issues which he says should have been raised on direct appeal as follows:

> The most important issues in Petitioner's case were whether he was competent to stand trial at all; whether he was competent to represent himself; whether he had made a knowing and intelligent waiver of his right to counsel; and whether, even assuming the trial court was correct in letting him begin the trial representing himself, the trial court should have, because of all of the red flags raised by Petitioner's conduct throughout the trial, reappointed standby counsel long before the mitigation phase.
>
> . . .
>
> Nothing at all was raised regarding Petitioner's competence to even

---

[4] Although the heading of the Warden's argument on this Ground for Relief asserts procedural default, in the body of the argument the Warden states ""While Taylor has properly preserved this claim for habeas review, his claim fails on the merits."  (Warden's Merit Brief, Doc. No. 53, at 82.)

stand trial, even though this was the subject of a pretrial motion and hearing.

Appellate counsel raised nothing regarding the cumulative effect of trial errors to combine and render this Petitioner's trial unfair and his sentence arbitrary and unreliable.

Nothing was raised in the brief to the Supreme Court regarding the trial court erroneously permitting the prosecutor to introduce highly prejudicial evidence from the trial phase of the capital case in the mitigation phase despite the fact that trial counsel objected to this.

Appellate counsel raised nothing regarding the trial court's refusal to let attorney Michael Ellerbrock testify in defense of Petitioner regarding why Petitioner was having his wife followed by a private investigator.

Appellate counsel raised nothing with regard to the trial court's refusal to permit Petitioner's wife to be recalled to the stand by Petitioner after he had become emotionally upset during her cross examination.

Appellate counsel raised nothing with regard to the numerous, at least twenty-five in total, off-the-record bench conferences that were held throughout the trial.

. . .

Petitioner was entitled to a complete transcript of the proceedings below. A complete transcript was not kept. Appellate counsel not only did not raise this as an error, she apparently did not even bother to find out what happened at any of those 25 unrecorded conferences.

(Petitioner's Merit Brief, Doc. No. 52, at 81-84.)

In the Application for Reopening, Petitioner asserted it was ineffective assistance of appellate

counsel to omit the following propositions of law:

**Proposition of Law No. 1:** When evidence presented at a competency hearing reveals that the defendant does not understand the nature and objective of the proceedings against him and the defendant cannot assist his counsel in his defense, a trial court errs by finding the defendant competent to stand trial.  U.S. Const. amends. VI, VIII, XIV; Ohio Const. Art. I, §§9, 16.

**Proposition of Law No. 2:** A trial court violates a capital defendant's rights to a fair trial and due process when, as in Appellant's case, the court misinforms the defendant of his rights and the law applicable to his case, fails to correct defense counsel's misstatement of the defendant's right to testify, and fails to properly instruct the jury. U.S. Const. amends. VI, VIII, XIV; Ohio Const. Art. I, §§9, 16.

**Proposition of Law No. 3:** When a prosecutor commits acts of misconduct during a capital trial, such as asking leading questions on direct examination, eliciting victim-impact evidence during the trial phase, and presenting unfair and prejudicial penalty-phase closing arguments, the defendant is denied substantive and procedural due process rights to a fair trial and reliable sentence. U.S. Const. amends. VI, VIII, XIV; Ohio Const. Art. I, §§9, 16.

**Proposition of Law No. 4:** Appellant's Sixth Amendment right to effective assistance of counsel was violated when his attorneys failed to seek forensic psychological opinions on whether Appellant was competent to waive his right to counsel and represent himself against capital aggravated murder charges; failed to inform Appellant of his right to testify; and failed to object to prosecutorial misconduct during the penalty phase of his capital trial. U.S. Const. amends. VI, VIII, XIV; Ohio Const. Art. I, §§9, 16.

**Proposition of Law No. 5:** The cumulative effect of trial errors renders a capital defendant's trial unfair and his sentence arbitrary and unreasonable. U.S. Const. amends. VI, VIII, XIV; Ohio Const. Art. I, §§9, 16.

(Application for Reopening, Return of Writ Appendix Vol. 9, at 6-7.)

When one compares the ten omitted "issues" raised in Petitioner's Merit Brief in this Court with the omitted Propositions of Law in his Application for Reopening in the Ohio Supreme Court, the only overlap is (1) the issue of Petitioner's competence to stand trial and (2) the cumulative error issue. To reiterate, it cannot have been an objectively unreasonable application of clearly established federal law for the Ohio Supreme Court to have failed to reopen the appeal on any other issues since it was not asked to do so.

For the reasons set forth above in deciding the Fourth Ground for Relief, the Magistrate Judge

40

remains of the opinion that it was not objectively unreasonable for the Ohio Supreme Court to conclude that it was not ineffective assistance of counsel to fail to raise the issue of Petitioner's asserted incompetence to stand trial. Again, the trial judge did not ignore obvious symptoms and fail to conduct a hearing. When there was a hearing, he was confronted with conflicting expert opinions as to Petitioner's competence to stand trial. Both experts were qualified forensic psychologists. The trial judge's decision to accept one of those opinions was not so clearly erroneous that it was likely to have been reversed on appeal. Therefore, considering the factors set forth in *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999), it was not ineffective assistance of appellate counsel to fail to raise it on direct appeal.

Nor can it be said to have been an unreasonable application of clearly established federal law to find no ineffective assistance of appellate counsel in failing to raise the "cumulative error" issue. The Sixth Circuit has held, post-AEDPA, that "not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005), citing *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002); *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002). Petitioner cites no law to the contrary, that is, law on which Petitioner could have relied to assert on direct appeal that the cumulative errors at trial should have resulted in a reversal.

The Twelfth Ground for Relief should be denied with prejudice.


### Thirteenth Ground for Relief


The Thirteenth Ground for Relief has been withdrawn (Petitioner's Merit Brief, Doc. No. 52, at 89).

**Fourteenth Ground for Relief**

The Fourteenth Ground for Relief has been withdrawn (Petitioner's Merit Brief, Doc. No. 52, at 89).

**Conclusion**

In accordance with the foregoing analysis, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied in its entirety with prejudice.

July 14, 2006

s/ Michael R. Merz
Chief United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).